## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

|  |  |  |
|---|---|---|
| TIMOTHIE E. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 21-1072C |
| | ) | |
| v. | ) | Filed: March 15, 2022 |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

_____

### <u>OPINION AND ORDER</u>

Plaintiff Timothie E. Smith filed this action against the United States challenging the Army's alleged failure to correctly determine his disability rating, which resulted in him being medically separated from service rather than retired by reason of physical disability. Mr. Smith contends the Physical Disability Board of Review ("PDBR") acted arbitrarily and capriciously when it denied his request to increase his disability rating from 10 percent, which was the rating determined by an informal Physical Evaluation Board ("PEB") before his discharge, to 30 percent. Before the Court is the Government's Motion to Dismiss for Lack of Jurisdiction. It contends that Mr. Smith's Complaint is time-barred because he failed to file suit within six years of the date of his discharge from the Army in 2004. For the reasons discussed below, the Complaint fails to state a claim subject to the limited jurisdiction of the Court. Accordingly, this case must be **DISMISSED**.

## I.   BACKGROUND

### A.   Factual History

Mr. Smith is a former Nuclear Medical Specialist for the United States Army who served on active duty from October 25, 1984, to November 18, 1987. *See* Pl.'s Compl. ¶ 10, ECF No. 1.

After leaving active duty, Mr. Smith joined the Army Reserve National Guard and served until November 1991.  *Id.*  In 2001, he rejoined the Army Reserve National Guard.  *Id.*  The Army later ordered him to active duty as a reservist on February 3, 2003.  *Id.*

Following activation, Mr. Smith began intensive physical training in anticipation of deployment.  *Id.* ¶ 11.  By March 2003, he started to experience pain, swelling, and limited range of motion in his left knee.  *Id.*  X-rays and an MRI reflected a large joint effusion and possible medial meniscal tear of his left knee.  *Id.*  Diagnostic orthoscopy revealed medical gonarthrosis with patellofemoral degenerative joint disease.  *Id.* ¶ 12.  Starting in July 2003, Mr. Smith attempted to rehabilitate the injury with physical therapy.  *Id.* ¶ 13.  By September 2003, he had received three injections of Hyalgan to treat his condition but still displayed significant pain and swelling in his left knee and related discomfort in his hip.  *Id.*

With little improvement in his condition, Mr. Smith was referred to a Medical Evaluation Board ("MEB") and examined on November 14, 2003.  *Id.* ¶ 14; *see* Govt.'s Mot. to Dismiss, Ex. 1 (Dep't of Army, DA Form 3947, Medical Evaluation Board Proceedings (Nov. 24, 2003)) at 2, ECF No. 7-1.  The MEB noted that Mr. Smith's condition persisted despite rest, physical therapy, and anti-inflammatory medication.  ECF No. 1 ¶ 14.  It also noted that x-rays of his left hip reflected the same degenerative changes as his left knee.  *Id.*  The MEB concluded that, while Mr. Smith did his best to regain full duty status, his symptoms were consistent with chronic osteoarthritis and warranted referral to the PEB for adjudication.  *Id.*; *see* ECF No. 7-1 at 2.

On January 13, 2004, the PEB adjudicated Mr. Smith's left knee as unfit and recommended he be discharged from service with a disability rating of 10 percent.  ECF No. 1 ¶ 15; Govt.'s Mot. to Dismiss, Ex. 2 (Dep't of Army, DA Form 199, Physical Evaluation Board (PEB) Proceedings (Jan. 13, 2004)) at 2, ECF No. 7-2.  Although the PEB acknowledged Mr. Smith's limited mobility,

it determined that his left hip was not unfitting.  *Id.*  The PEB used the U.S. Army Physical Disability Agency ("USAPDA") pain policy to set his disability rating.  *Id.*  Mr. Smith accepted the informal PEB's decision and waived his right to a hearing before a formal PEB.  ECF No. 7-2 at 3.  Because of his 10 percent disability rating, Mr. Smith was granted disability severance pay and honorably discharged from the Army on January 30, 2004.  ECF No. 1 ¶ 15.

Mr. Smith's mobility did not improve following discharge.  On November 3, 2004, the Department of Veterans Affairs ("VA") examined Mr. Smith in conjunction with his claim for disability benefits.  *Id.* ¶ 16; Govt.'s Mot. to Dismiss, Ex. 3 (Dep't of Veterans Afr., Rating Decision (Feb. 10, 2005)) at 4–5, ECF No. 7-3.  Now nine months removed from his disability adjudication, Mr. Smith reported approximately three "flare-ups" per week in his left knee resulting in debilitating pain that lasted four to five hours.  ECF No. 1 ¶ 16.  He also reported pain, fatigue, and lack of endurance following repetitive use of his left knee and periodic instances of locking pain.  *Id.*  Further, he complained of pain in his left hip approximately twice per week that lasted for one hour.  *Id.*  This pain restricted his activities and forced him to rely on pain medication to manage his symptoms.  *Id.*  The VA rated him as 30 percent disabled, with 10 percent attributed to osteoarthritis in his right knee, 10 percent attributed to degenerative joint disease in his left hip, and 10 percent attributed to osteoarthritis in his left knee following torn medial meniscus repair.  ECF No. 7-3 at 4–5.  Ultimately, Mr. Smith's arthritis rapidly progressed and he underwent a right knee replacement in 2007 and a left knee replacement in 2008.  ECF No. 1 ¶ 17.

## B.    Procedural History

In 2014, Mr. Smith requested review of his informal PEB disability rating from the PDBR.  *Id.* ¶ 18.  Congress created the PDBR in 2009 to review the accuracy and fairness of combined disability ratings of 20 percent or less assigned to service members discharged between September

11, 2001, and December 31, 2009. *See* 10 U.S.C. § 1554a; *see also* Military Health System, *Physical Disability Board of Review*, https://health.mil/Military-Health-Topics/Access-Cost-Quality-and-Safety/DoD-VA-Sharing/Disability-Evaluation/Physical-Disability-Board-of-Review (last visited Mar. 14, 2022). Per Department of Defense ("DoD") policy, the PDBR reviews disability ratings using the Veteran Affairs Schedule for Rating Disabilities ("VASRD")—not the USAPDA—in effect at the time of the service member's separation. ECF No. 1 ¶ 6 (citing Department of Defense Instruction ("DoDI") 6040.44, incorporating change 1 (June 2, 2009), encl. 3, ¶ 5.e.(1) (June 27, 2008)). Under DoDI 6040.44, "[p]rovisions of DoD or Military Department regulations or guidelines relied upon by the PEB will not be considered by the PDBR to the extent they were inconsistent with the VASRD in effect at the time of the adjudication." DoDI 6040.44, encl. 3, ¶ 5.e.(1). The PDBR is limited to reviewing conditions documented in PEB proceedings and relies on medical information provided by the VA and military department. *See id.* at ¶¶ 4.c., 5.a.(4).

On May 4, 2015, the PDBR denied Mr. Smith's request to increase his disability rating. *See* ECF No. 1 ¶¶ 7, 18; Govt.'s Mot. to Dismiss, Ex. 4 (Dep't of Def. Physical Disability Bd. of Rev., Record of Proceedings (Nov. 20, 2014)) at 3–4, ECF No. 7-4. First, the PDBR found that the record lacked evidence to support a higher or additional rating for Mr. Smith's left knee. *Id.* Second, the PDBR found that the record lacked evidence of the left hip condition and there was no performance-based evidence warranting a change of the PEB's determination with respect to Mr. Smith's left hip. *Id.*

On March 13, 2021, Mr. Smith filed his Complaint in this Court. *See* ECF No. 1. He contends that the PDBR acted arbitrarily and capriciously by failing to adequately address the evidence presented to the PEB and the VA and by incorrectly applying the VASRD to deny his

request to increase his disability rating to 30 percent. *Id.* ¶¶ 20–22. On June 21, 2021, the Government filed a Motion to Dismiss under Rule 12(b)(1), arguing the Court lacks jurisdiction because the statute of limitations expired on Mr. Smith's claim in 2010, six years after Mr. Smith was discharged from the Army. *See* Govt.'s Mot. to Dismiss, ECF No. 7. In response, Mr. Smith argues that his claim is timely because it first accrued when the PDBR, which was the first statutorily authorized board to review his claim under the VASRD standard, issued its denial decision. *See* Pl.'s Opp'n to Govt.'s Mot. to Dismiss at 3–4, ECF No. 8.

## II.   LEGAL STANDARDS

### A.   Jurisdiction of the Court of Federal Claims

The United States Court of Federal Claims is a court of limited jurisdiction. *Massie v. United States*, 226 F.3d 1318, 1321 (Fed. Cir. 2000). Derived from the Tucker Act, the Court's jurisdiction extends over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Therefore, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

Like other claims filed in this Court, a claim for military disability pay is subject to the statute of limitations in 28 U.S.C. § 2501; thus, it must be brought within six years after it first

accrues.  *See Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005).  The limitations period is jurisdictional and not subject to equitable tolling.  *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008); *Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008).

**B.      Standard of Review for Rule 12(b)(1) Motion**

A challenge to the Court's subject-matter jurisdiction over all or part of the claims asserted in a complaint is properly raised by motion under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC").  Addressing jurisdiction at the initial pleadings stage is essential because jurisdiction is a threshold requirement.  If the Court determines that it lacks subject-matter jurisdiction, it must dismiss the action.  RCFC 12(b)(1), (h)(3); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).

The burden of proving subject-matter jurisdiction lies with the plaintiff.  *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  On a motion to dismiss under RCFC 12(b)(1), "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."  *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)).  If jurisdictional facts are disputed, however, the plaintiff may not rely on allegations alone.  It must produce "competent proof" supporting its allegations.  *McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936); *see Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence." (citation omitted)).  The Court is then free to look at evidence outside of the pleadings as necessary and may "find facts on its own."  *Meyers v. United States*,

96 Fed. Cl. 34, 43 (2010).

### III.  DISCUSSION

In the present action, the Government contends the Court lacks jurisdiction because Mr. Smith's claim is barred by this Court's six-year statute of limitations.[1]  *See* ECF No. 7 at 5.  It argues that Mr. Smith's claim first accrued in 2004 upon his separation from the Army—and thus expired in 2010—because the PEB made a disability determination (which he accepted) prior to his discharge.  *Id.* at 7.  In response, Mr. Smith contends that his claim did not accrue until the PDBR issued its denial decision in 2015 because the PDBR was the first "appropriate board" to review his claim.  *See* ECF No. 8 at 4.  According to Mr. Smith, Congress's creation of the PDBR through passage of § 1554a and the PDBR's application of a different disability rating, per DoDI 6040.44, were "event[s] necessary for the determination of the Government's liability."  *Id.*  The weight of authority is not on Mr. Smith's side.

For purposes of determining jurisdictional timeliness, the Federal Circuit has indicated that a claim ordinarily accrues "when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money."  *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1358–59 (Fed. Cir. 2011) (quoting *Samish Indian Nation v. United States*, 419 F.3d 1355, 1369 (Fed. Cir. 2005)).  For disability retirement pay claims, the "generally

---

[1] The parties do not dispute—and the Court agrees—that, if timely filed, the Court would have jurisdiction over this military disability action.  The United States Court of Appeals for the Federal Circuit has consistently held that the Military Disability Retirement Pay Act, 10 U.S.C. § 1201, on which Mr. Smith relies to assert his claim, is money-mandating.  *See Chambers*, 417 F.3d at 1223; *Fisher v. United States*, 364 F.3d 1372, 1379 (Fed. Cir. 2004), *rev'd on other grounds*, 402 F.3d 1167 (Fed. Cir. 2005) (en banc).  Under § 1201, the Secretary may retire a service member with pay if he determines the member is unfit to perform the duties of his or her office, grade, rank, or rating because of physical disability.  *See* 10 U.S.C. § 1201(a).  The Court has jurisdiction to review disability claims under the statute because a finding that a service member has a qualifying disability entitles that member to monetary benefits.  *See Fisher*, 364 F.3d at 1379.

accepted rule" is that accrual occurs when "the appropriate board either finally denies such a claim or refuses to hear it." *Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990) (citing *Friedman v. United States*, 159 Ct. Cl. 1 (1962), *cert. denied sub nom.*, 373 U.S. 932 (1963)).  In other words, it is the decision "by the first statutorily authorized board which hears or refuses to hear the claim [that] is the triggering event." *Id.*

If, as here, "the service member requested review by an appropriate board [before discharge] and the request was denied, or if the board heard the service member's claim and denied it, then the limitations period begins to run upon discharge." *Chambers*, 417 F.3d at 1225 (citing *Real*, 906 F.2d at 1560).  A later request for review submitted to a corrections board does not toll the statute of limitations on such claim, "nor does a new claim accrue upon denial of the petition by the corrections board." *Real*, 906 F.2d at 1560 (citing *Friedman*, 159 Ct. Cl. at 14–15). However, where a "service member had neither requested nor been offered consideration by a disability board prior to discharge," the Federal Circuit has (with one exception not relevant here) held that the later denial of a petition by a corrections board "triggers the statute of limitations." *Chambers*, 417 F.3d at 1226 (citing *Real*, 906 F.2d at 1562).

In the instant case, an informal PEB found Mr. Smith unfit for duty at a disability rating of 10 percent on January 13, 2004, prior to his discharge on January 30, 2004. *See* ECF No. 1 ¶¶ 10, 15; ECF No. 7-2 at 3.  At all times relevant to Mr. Smith's claim, the PEB was "a proper and competent tribunal" to determine his disability. *Fuller v. United States*, 14 Cl. Ct. 542, 544 (1988); *see Quesada v. United States*, 136 Fed. Cl. 635, 643 (2018) (citing *Chambers*, 417 F.3d at 1225 & n.2).  Because Mr. Smith accepted the informal PEB's finding and waived his right to a formal PEB hearing, its decision became final and was "sufficient to trigger the running of the statute of limitations on [his] disability retirement claim." *Jeun v. United States*, 128 Fed. Cl. 203, 213

(2016).   Based on the six-year statute of limitations, Mr. Smith's claim for relief expired on February 1, 2010.[2]   *See Chambers*, 417 F.3d at 1225.

To circumvent this jurisdictional bar, Mr. Smith contends that the Court should not use the date of discharge following the PEB decision to start running the clock on his claim, but rather the date of the PDBR decision to deny his petition for review in 2015.   *See* ECF No. 8 at 4.   The Court sees no reason to deviate from the well-established rule that the later request for administrative review of Mr. Smith's pre-discharge PEB decision neither tolled the statute of limitations on his claim, nor provided for a new claim to accrue.   *See Real*, 906 F.2d at 1560.

The Federal Circuit explained the underlying rationale of the general rule in *Chambers*.   In that case, the Court examined whether its decision in *Martinez v. United States*, 333 F.3d 1218 (Fed. Cir. 2005), which held that claims for wrongful discharge under the Military Pay Act, 37 U.S.C. § 204, accrued upon discharge rather than upon the final decision of the appropriate military corrections board, "disturb[ed] the so-called 'first competent board rule' of *Friedman*." *Chambers*, 417 F.3d at 1225.   The Court concluded it did not because of the difference in the money-mandating statute that gives rise to a disability retirement claim.   As the Court explained, "in the context of section 1201, 'Congress has entrusted the military boards with the task of determining whether a serviceman should be retired for disability and therefore . . . no cause of action arises (and the statute of limitations does not run) until a proper board has acted or declined to act.'"   *Id.* at 1224 (quoting *Friedman*, 159 Ct. Cl. at 13).   The focus, therefore, for purposes of determining both jurisdiction and jurisdictional timeliness of a § 1201 claim is whether, and if so when, the plaintiff exhausted this mandatory administrative remedy by obtaining a final disability decision from the appropriate board.   *Id.* at 1225 (citing *Friedman*, 159 Ct. Cl. at 18–19).

---

[2] As the Government notes, January 30, 2010, fell on a Saturday.  ECF No. 7 at 5 n.2.

As thoroughly discussed in *Friedman*, once that initial mandatory administrative action is completed, the condition precedent to the cause of action is satisfied and the claim *first* accrues for purposes of the statute of limitations.  *See Friedman*, 159 Ct. Cl. at 14.  A plaintiff's later request for administrative review by another board that is merely permissive in nature does not affect the running of the limitations period.  *Id.* at 25–26 (holding that a judicial cause of action arises immediately upon a proper administrative tribunal's denial or refusal to hear a claim and "does not start again" upon a subsequent decision issued in permissive administrative proceedings); *see Real*, 906 F.2d at 1560 (citing *Friedman*, 159 Ct. Cl. at 15–16).

Here, the PDBR provided Mr. Smith with permissive administrative review of the disability rating previously assigned to him by the PEB, much like a military board of corrections would upon the filing of an application for review.[3]  *See* 10 U.S.C. § 1554a(c) (providing that the PDBR shall review the findings of a PEB with respect to a covered individual upon the request of that covered individual or may conduct such review upon its own motion).  Because Mr. Smith received a final disability determination from the PEB, the PDBR's review of that prior adverse decision and its denial of his request to increase his disability rating did not affect the accrual date of his claim.  Another judge of this court recently reached the same conclusion in a case involving subsequent review by the PDBR.  *See Jeun*, 128 Fed. Cl. at 214.  The facts of *Jeun* are very similar to the present case.  The plaintiff received and accepted an informal PEB decision assigning him a 10 percent disability rating and as a result was discharged with disability severance pay.  *Id.* at 207, 208.  He later petitioned the PDBR seeking an increase in his rating to 30 percent.  *Id.* at 208.

---

[3] Indeed, § 1554a contemplates that if the Secretary of Defense decides to sunset the PDBR (on or after fiscal year 2021), any remaining requests for review pending at the time will be transferred, and any new requests for review under § 1554a will be assigned, to an appropriate board for the correction of military records operating under 10 U.S.C. § 1552.  *See* 10 U.S.C. § 1554a(g)(2).

After the PDBR denied his request, he filed suit in the Court of Federal Claims.  *Id.* at 209.  Although he brought his claim over six years after his discharge, like Mr. Smith, the plaintiff in *Jeun* argued that the limitations period ran from the PDBR's decision.  *Id.* at 213.  Rejecting the plaintiff's attempt to circumvent the statute of limitations, the court determined the informal PEB decision triggered the accrual date and held the claim was untimely because "[h]is subsequent petition to the PDBR did not serve to toll or re-start the running of the statute of limitations."  *Id.* at 214 (citing *Real*, 906 F.2d at 1560).

Mr. Smith seeks to harmonize his timeliness claim with the binding precedent discussed above and to distinguish *Jeun* as inapplicable.  He argues that because the PDBR, per the DoD policy implementing § 1554a, applied a different standard (the VASRD) to review his prior PEB decision, the PDBR was the "first 'appropriate board'" to evaluate his claim.   ECF No 8 at 3.  As such, the events "necessary to 'fix the Government's alleged liability'" did not occur until the PDBR denied his claim in 2015.  *Id.*  Mr. Smith correctly notes that this argument was not presented in *Jeun*.  *Id.* at 4.  But while the PDBR did apply a different disability rating system when it considered Mr. Smith's claim, this alone does not create a new independent cause of action or otherwise affect the accrual date of his claim.

First, the standard applied by the PDBR does not change the fundamental fact that its decision was not a *mandatory* administrative remedy necessary for the military to determine whether Mr. Smith should have been retired by reason of disability.  *Chambers*, 417 F.3d at 1224.  Mr. Smith does not contend that he was unable to assert a claim of entitlement to disability retirement prior to the date he received his PDBR decision, nor could he.  The PDBR functioned only as a reviewing tribunal, available to covered individuals *at their option* (or upon the board's own option) to reevaluate certain prior PEB decisions.  10 U.S.C. § 1554a(c).  Regardless of its

creation, the standard it applied, or Mr. Smith's decision to apply for review, his claim ripened (meaning his claim accrued and this Court acquired jurisdiction over it) when the informal PEB decision became final in 2004.  *See Friedman*, 159 Ct. Cl. at 18–19.  To hold otherwise would allow Mr. Smith and all other covered individuals under § 1554a to "in effect, pick his own time for suit," as he would be free to wait several years—up until the date the Secretary sunsets the board—before applying for PDBR review and then bringing suit after it issued a decision.  *Id.* at 30.  The result would thwart the basic objectives of statutes of limitations, which ensure that claims are promptly handled and that the evidentiary limitations attendant to litigating stale claims are avoided.

Second, even if the Court looks to the PDBR's application of a different standard, prior decisions of this court have concluded that the statute of limitations does not reset whenever a new legal remedy becomes available to a plaintiff.  The Court of Federal Claims treats the statute of limitations "with that conservatism which is appropriate in the case of a waiver of sovereign immunity."  *United States v. Sherwood*, 312 U.S. 584, 590 (1941).  For this reason, "optional administrative remedies do not defer or toll the statute of limitations" unless the intervening change of law expressly provides for it.  *O'Callahan v. United States,* 196 Ct. Cl. 556, 562 (1971).  For example, in *Kingsport Horizontal Property Regime v. United States*, the Court of Federal Claims considered whether a plaintiff could bring a takings claim in 1993, for events that occurred in 1975, when the Federal Circuit only recognized the substantive right to relief in 1988.  53 Fed. Cl. 556, 561 (2002).  Though the plaintiff argued that the timeliness of her claim should be measured by the date of the Federal Circuit decision—not the date of the causative events—the court rejected her argument on the basis that § 2501 does not include such an exception.  *Id.* ("[W]e conclude that the statute of limitations applies to every claim for monetary relief against the United States,

including those claims for a which a legal remedy may not have been available at the time the defining events first occurred." (citing *O'Callahan*, 196 Ct. Cl. at 563)).   Likewise, in *Cosmopolitan Manufacturing Company v. United States*, the Court of Claims held that the statute of limitations began to run on a contract claim even where the cause of action was temporarily barred by a Supreme Court decision and then later restored by an intervening change of law.  *See* 156 Ct. Cl. 142, 144 (1962).  As the court explained, the new statute did not contain affirmative evidence demonstrating that Congress intended to grant a new right of action, especially to those whose claims were by then time-barred, and indeed the legislative history showed otherwise.  *Id.* at 146.

Here, Mr. Smith does not argue that § 1554a explicitly provides for a new claim of entitlement to disability retirement upon issuance of a PDBR decision.  Nor does he claim that § 1554a provides an independent basis for the Court's jurisdiction, because it is not money-mandating.  ECF No. 8 at 3 (citing *Quesada*, 136 Fed. Cl. at 642).  At argument, his counsel contended that a right to bring an action for money damages challenging the PDBR's decision should be implied, otherwise Congress would have provided a remedy without review.  This would be non-sensical, counsel argued, because the retroactive scope of § 1554a necessarily meant that some covered individuals who might seek PDBR review already had time-barred claims under this Court's statute of limitations as of the date the PDBR was created.

The Court recognizes the equitable appeal of Mr. Smith's position.  Holding for the Government would mean that a class of individuals was automatically precluded from seeking judicial review of their PDBR decision in this Court, while another class was not.  *Friedman* considered a similar scenario in analyzing whether subsequent review by a corrections board should toll the limitations period since the board's decision could become insulated from judicial

review if issued after the period expired. *See* 159 Ct. Cl. at 26. As the court explained, it is not "unique in federal law to have an administrative remedy immune from judicial review if a timely proceeding is not commenced." *Id.* at 28 ("[I]t is inherent in all statutes of limitations that claims otherwise justifiable and justiciable will be denied because suit is not brought in time."); *see O'Callahan*, 196 Ct. Cl. at 563 (rejecting the "theme often heard in this court: that it is absurd to say that a person has forfeited a right of action before he ever had one"). Had Congress wished to correct the disparity in the availability of judicial review of PDBR decisions in this Court, it could easily have done so. *See Friedman*, 159 Ct. Cl. at 28; *see also Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019) (explaining that the length of a statute of limitations reflects the value judgment of Congress). The text of § 1554a does not evince that intent, and Mr. Smith does not point to any evidence demonstrating that such intent should be implied.[4] Accordingly, absent "some definite legislative indication to that effect," the Court must follow the generally accepted rule governing the limitations period for disability retirement claims.[5] *Friedman*, 159 Ct. Cl. at 33.

This conclusion is further supported by the stringent standard applied to waivers of sovereign immunity. As a general matter, the Court lacks jurisdiction to entertain claims against the United States absent such a waiver. *See Athey v. United States*, 908 F.3d 696, 702 (Fed. Cir. 2018) (citing *Sherwood*, 312 U.S. at 586). A waiver "cannot be implied but must be unequivocally

---

[4] In fact, the plain language of §1554a could be read to explicitly bar new claims. The statute provides that, when the PDBR makes an adverse determination, the prior action taken as a result of the PEB recommendation "shall be treated as final *as of the date of such action*." 10 U.S.C. §1554a(e)(3) (emphasis added).

[5] This is not to say, however, that a covered individual whose claim in this court was time-barred as of the date of his PDBR decision would have no right to judicial review in any court. Other plaintiffs have brought claims in federal district court challenging PDBR decisions under the Administrative Procedure Act. *See, e.g.*, s*ee Coleman v. Wilson*, No. 5:17-cv-00096, 2021 WL 3193222, at *3–5 (W.D.N.C. Apr. 16, 2021) (Cayer, Mag. J.).

expressed." *United States v. King*, 395 U.S. 1, 4 (1969).  "The terms of the statute waiving sovereign immunity define the extent of the court's authority to consider claims for money." *Hart v. United States*, 910 F.2d 815, 817 (Fed. Cir. 1990).  Because the requirement that the suit be "filed within six years after such claim first accrues" is a "condition" of the waiver of sovereign immunity attendant to this Court's jurisdiction, it "must be strictly observed."  *See Block v. North Dakota*, 461 U.S. 273, 287 (1983).

Accordingly, the Court finds that Mr. Smith's Complaint is barred by the statute of limitations because it was filed more than six years after his claim for disability retirement accrued. Consistent with binding precedent, his claim accrued in 2004 when he was discharged from the Army with severance pay following adjudication of his disability claim by the PEB, which was the first statutorily authorized board to hear his claim.  This conclusion holds true even though Congress subsequently created the PDBR, which per DoD policy applied a different disability rating standard than initially applied to Mr. Smith by the PEB.  The PDBR's review was nonetheless only a *permissive* administrative remedy that did not toll the statute of limitations or create a new claim.

## IV.  CONCLUSION

For these reasons, the Government's Motion to Dismiss (ECF No. 7) is **GRANTED** and Mr. Smith's Complaint (ECF No. 1) is **DISMISSED** for lack of jurisdiction pursuant to RCFC 12(b)(1).  The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

Dated: March 15, 2022                         */s/ Kathryn C. Davis*
                                                             KATHRYN C. DAVIS
                                                             Judge